525 A.2d 21

City Welding & Mfg. Co., Petitioner *v.* Workmen's Compensation Appeal Board (Williams), Respondent.

Submitted on briefs March 27, 1987, to Judges CRAIG and BARRY, and Senior Judge NARICK, sitting as a panel of three.

*Richard E. Flannery, Balph, Nicolls, Mitsos, Flannery & Motto,* for petitioner.

*Richard G. Spagnolli, Caroselli, Spagnolli & Beachler,* for respondent, Charles Williams.

OPINION BY JUDGE CRAIG, May 4, 1987:

The pivotal question which the court must presently address regards the burden of proof which a claimant must sustain under section 413 of The Pennsylvania Workmen's Compensation Act[1] in order to warrant a reinstatement of benefits after the claimant has signed a final receipt.

On March 27, 1978, claimant Charles Williams suffered a work-related injury when acid splashed into his

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §772.

left eye. The claimant received compensation pursuant to a Notice of Compensation Payable beginning the day after his disability, March 28, 1978, until he returned to work on April 5, 1978. On April 27, 1978, the claimant signed a final receipt.

On May 20, 1982, more than three years later, the claimant filed a petition to set aside final receipt, on a form captioned "Section 434,"[2] alleging that he had lost the use of his left eye for all practical intents and purposes. Further, the claimant stated that, because his claim involved an eye injury, it was excepted from the general three-year statute of limitations.

Following a hearing at which the claimant introduced expert medical testimony, the referee concluded, "[t]he claimant has sustained his burden of proof that he has sustained the loss of use of his left eye for all practical intents and purposes as a result of the injury." The referee hence directed the employer to pay compensation to the claimant for the loss of use of his left eye.

On appeal, the board affirmed the referee's decision, concluding that the claimant's petition, although erroneously filed on a section 434 form, could state grounds for relief under section 413, because the claimant had specified in his petition, consistent with section 413, that the three-year statute of limitations does not apply to eye cases. The board then concluded that the claimant's burden was to prove that the eye was lost for all practical intents and purposes and that the claimant had sustained that burden.

Initially, we agree with the board's conclusion that the claimant's failure to employ the proper form in seeking relief was not fatal to his claim. The board cited *Dunmore School District v. Workmen's Compensation Appeal Board (Lorusso)*, 89 Pa. Commonwealth Ct.

---

[2] 77 P.S. §1001.

368, 492 A.2d 773 (1985), in which this court reiterated that, because strictness of pleading is not required in workmen's compensation cases, evidence which justifies relief under some section of the Act warrants the granting of that relief, although the claimant may have presented his petition under an improper section. *Rose v. Horn & Hardart Baking Co.*, 214 Pa. Superior Ct. 56, 251 A.2d 721 (1969).

Both sections 413 and 434 of the Act include the general limitation that a claimant may seek a change in his compensation status by filing a petition within three years after the most recent payment of compensation. However, only section 413, which provides for reinstatement of an award or agreement, excepts eye injuries from that limitation. In part, that section provides:

> *[E]xcept in the case of eye injuries,* no notice of compensation payable, agreement or award shall be reviewed, or modified, or reinstated, unless a petition is filed with the department within three years after the date of the most recent payment of compensation made prior to the filing of such petition. . . .

77 P.S. §772 (emphasis added).

By contrast, section 434, which provides for the setting aside of a final receipt, contains no eye injury exception. It provides in pertinent part:

> [A] referee designated by the department may, at any time within three years from the date to which payments have been made, set aside a final receipt, upon petition filed with the department, or on the department's own motion, if it be shown that all disability due to the injury had not terminated.

77 P.S. §1001.

Therefore, because the claimant filed his petition more than three years after his last compensation payment, he may seek relief only under section 413.

Significantly, the claimant's burden of proof under section 413 is different from that in section 434. The latter provides that a claimant must show "that all disability due to the injury in fact had not terminated [when the final receipt was executed]." 77 P.S. §1001. *See Sheibley v. Workmen's Compensation Appeal Board (ARA Food Services Co.)*, 86 Pa. Commonwealth Ct. 28, 483 A.2d 593 (1984).

However, under section 413:

A *referee* designated by the department *may,* at any time, modify, *reinstate,* suspend, or terminate *a notice of compensation payable,* an original or supplemental agreement or an award of the department or its referee, upon petition filed by either party with the department, *upon proof that the disability of an injured employe has increased, decreased, recurred,* or has temporarily or finally ceased, or that the status of any dependent has changed. Such modification, reinstatement, suspension, or termination shall be made as of the date upon which it is shown that the disability of the injured employe has increased decreased, recurred, or has temporarily or finally ceased, or upon which it is shown that the status of any dependent has changed:

77 P.S. §772 (emphasis added). *See Memorial Osteopathic Hospital v. Workmen's Compensation Appeal Board (Brandon)*, 77 Pa. Commonwealth Ct. 518, 466 A.2d 741 (1983).

Accordingly, resolution of the case cannot rest solely upon the board's statement that the claimant's burden of proof under section 413 is met by establishing that his eye has been lost for all practical intents and purposes, citing *Thiele, Inc. v. Workmen's Compensation Appeal Board (Sulosky, Jr.)*, 83 Pa. Commonwealth Ct. 286, 477 A.2d 51 (1984). Although that statement describes

the burden of proof required to show a specific loss of an eye, section 413 demands that the claimant show that disability has recurred or increased.

Of course, in a case like the present one, if the original disability consisted of an impairment of eyesight falling short of a specific loss of the eye, evidence that the injury or disability had resolved itself subsequently into a specific loss—that is, loss of use of the eye for all practical intents and purposes—then such a record would necessarily confirm that there had been an *increase* in disability.

Although the referee's findings and conclusions do not refer to an increase or recurrence of disability as such, they clearly pinpoint the existence of a disability in terms of impaired vision at and after the signing of the final receipt and a subsequent loss of use of the eye for all practical intents and purposes, a specific loss, as of May 13, 1983.

The referee found:

2. . . . The claimant executed a final receipt upon his return to work, although all disability had not terminated as of that time.

3. At the time the claimant returned to work on April 5, 1978, his vision was blurred. Dr. N. M. Mittica, the ophthalmologist who had been treating him since the date of the injury, testified that the claimant was under his care after April 5, 1978 and had impaired vision after that date as a result of the injury.

4. Dr. Mittica, claimant's treating ophthalmologist, testified by deposition that the claimant had lost the use of his left eye for all practical intents and purposes as of May 13, 1983.

. . . .

7. Your referee accepts the testimony of Drs. Cignetti and Mittica as credible.

8. The claimant has lost the use of his left eye for all practical intents and purposes, as a result of the acid burn sustained by the claimant on March 27, 1978.

Although Dr. Mittica testified that the claimant suffered from glaucoma in addition to the March 27, 1978 acid injury, he opined that the injury had nothing to do with the glaucoma. However, Dr. Mittica also testified that the claimant's defective peripheral vision could be due to the glaucoma, but his defective central vision was, in his opinion, due to the acid injury.

Regarding the claimant's vision based upon his examination on the date of the accident, Dr. Mittica testified:

Q. Did you examine Mr. Williams on March 27, 1978, and if so, what was the nature of your examination?

A. His left eye was quite red and the cornea was hazy, showing corneal abrasion with some swelling. That's what the haze was due to. His vision was through a pin hole. It was 20/30 in each eye. . . .

Q. Okay. At that time, Doctor, how did the acid injury affect the visual acuity of Mr. Williams' left eye or could you tell at that point?

A. I knew the retina was good because he could see 20/30 through the pin hole, but I knew he couldn't see through the cornea, because it was too damaged at that time. The abrasion made the media very distorted. The pin hole, what that does is eliminate all that to give you an idea of what the retina is like.

Dr. Mittica also examined the claimant on August 13, 1979. Before the referee, he testified as to his prognosis with respesct to the acid burn injury to the claimant's cornea in the left eye and also noted the changes taking place therein. He testified:

A.   At that time his corrected vision was 20/20 in the right eye, 20/50 in the left eye, except that his pin hole vision was 20/30 and even with the glasses he was able to read the finest print with the left eye, but his distance vision had changed.

Q.   What would you attribute the distance change to?

A.   What may have been happening there is that the cornea was undergoing some kind of change. That could be the only explanation I have for the change, because it was not in the retina, because he was able to see 20/30 with the pin hole.

However, Dr. Mittica testified that, as of his May 13, 1983 examination of the claimant, the claimant was unable at that time to see through a pin hole as he had done previously. His only explanation was his opinion that the scar due to the acid injury had worsened. He testified:

Evidently the scar has gotten worse since I last saw him. Not that I can tell by looking at the scar itself, but we're dealing with a membrane that doesn't take much to cloud over to give you some difficulty. . . . [W]hen I last saw him his vision was good and the scar, as far as I can tell, hasn't got that much denser. So I don't understand why he doesn't see well through a pin hole anymore out of either eye. He's always seen well through a pin hole and through glasses before. All of a sudden he doesn't see well out of either eye, and that's the thing.

Dr. Mittica's observation as to the *decline* in the claimant's central vision supports the import of the referee's Findings Nos. 2, 3 and 4, indicating to us that the claimant's disability increased after the date of the notice of compensation payable. Accordingly, we affirm.

580

ORDER

Now, May 4, 1987, the order of the Workmen's Compensation Appeal Board, at No. A-88433, dated February 19, 1986, is affirmed.